UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| ALAIN VIZCAY OSORIO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:26-cv-00004-SCM |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RYAN KILMER, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

In this year, when we celebrate the two-hundred-fiftieth anniversary of our Nation's independence, it is as important as ever to reflect on the principles that animated the creation of our Republic. Among those principles is the protection of the people from unreasonable and arbitrary seizures of their persons by the government. This principle is directly implicated in this case, where the Plaintiff alleges that he was wrongly arrested and jailed for more than two weeks simply because artificial intelligence misidentified him as the perpetrator of a crime. Of course, discovery might show that there is more to the story than the Plaintiff alleges. But assuming the truth of the Plaintiff's allegations—which the Court must do at this juncture—the Plaintiff has adequately stated claims upon which relief can be granted. The Fourth Amendment to the United States Constitution does not allow a detective to delegate to AI the task of assessing probable cause. In other words, the Fourth Amendment does not permit an individual to be arrested based on nothing more than an uncorroborated conclusion by AI that the individual in question has

committed a crime. And no reasonable detective in the Defendant's position could conclude otherwise. Accordingly, the Defendant's motion for judgment on the pleadings must be denied.

## I. Facts[1]

On August 30, 2024, a black male identifying as "Ernesto Ramirez" tried to cash a suspected fraudulent check at the Heritage Bank in Florence, Kentucky, after showing a Texas operator's license. [Dkt. 3 at 2–3]. The teller thought the license appeared fake, so the teller refused to cash the check, and the black male left the bank empty-handed. [*Id.* at 3]. Security-camera footage captured the incident with an unobstructed view of the black male's face. [*Id.* at 3; Dkt. 3-1 at 1].

Within a couple of weeks, Detective Ryan Kilmer of the Florence Police Department began to investigate the suspected check fraud by attempting to identify the suspect at the bank. [Dkt. 3 at 3]. A search for the Texas operator's license revealed that it was a fake, so Detective Kilmer turned to the security camera footage. [*Id.*]. First, he took a screenshot of the suspect's face. [*Id.* at 3–4]. Then, he used AI facial recognition technology to match the screenshot with a booking photo and a Facebook profile image. [*Id.* at 4]. Relying solely on the AI identification, Detective Kilmer concluded that the match was accurate. [*Id.* at 4–5]. The Facebook profile belonged to an individual known as "Yony Smith Npoles Charon," and for an unknown reason, Detective Kilmer concluded that "Yony" was actually Alain Vizcay

[1] The following facts contain Plaintiff Alain Vizcay Osorio's allegations, which the Court must accept as true for the purpose of ruling on Defendant Ryan Kilmer's Motion for Judgment on the Pleadings. *See Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 480 (6th Cir. 2020).

Osorio—the man in the booking photo. [*Id.*]. Detective Kilmer then signed a Criminal Complaint containing the following statement:

> This detective contacted Heritage Bank and obtained a copy of the security footage. This detective used pictures of the [subject's] face and using investigative tools was able to find a booking photo that appears to match the subject in the security camera footage. This detective took the booking photo, as well as the [subject's] Facebook profile and compared them to the security footage. At that point this detective observed that the subjects matched. The subject in the security footage is identified as Yony Smith Npoles Charon, also known as Alain Vizcay Osorio.

[Dkt. 3-3]. The Criminal Complaint was used as a basis for an Arrest Warrant, [Dkt. 3-4], which officers executed on Osorio in Florida on January 9, 2025, [Dkt. 3 at 5].

Osorio, a Nebraska resident, was extradited to Boone County, Kentucky, and charged with criminal possession of a forged instrument in the first and second degrees. [*Id.* at 2, 5; Dkt. 3-4]. On January 23, 2025, Boone District Court arraigned Osorio, and he entered a plea of not guilty. [Dkt. 3 at 5]. Osorio was released on bond the next day, and in March 2025, he was indicted on both counts. [*Id.* at 6]. On May 7, 2025, Boone Circuit Court also arraigned Osorio, but this time the Commonwealth Attorney's Office dismissed the indictment against Osorio with prejudice because Osorio had proved that he was working in Nebraska at the time the allegedly fraudulent check was presented at Heritage Bank. [*Id.* at 6].

The individuals in the security footage and the Facebook profile image do not resemble the booking photo of Osorio. [*Id.* at 6–7]. Based on the booking photo, the only thing Osorio has in common with the suspect is that he is a black male with facial hair. [Dkt. 3-1 at 2–3]. Based on the photographs, it appears that Osorio has a different head shape, different haircut, different facial features, and different

complexion. [*See id.*; Dkt. 13 at 10].

According to Osorio, Detective Kilmer stated in the Civil Complaint that he used "investigative tools" to "match" Osorio to the suspect when, in reality, Detective Kilmer relied solely on the output of AI facial recognition technology even though Osorio clearly looked different from the suspect. [Dkt. 3 at 4–5]. Florence Police Department Policy provides that AI facial recognition technology is "advisory" and does not "establish probable cause without further investigation." [Dkt. 3-2 at 3].

On January 8, 2026, Osorio filed a Complaint against Detective Kilmer, asserting claims for: (1) false arrest and imprisonment in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983; (2) malicious prosecution in violation of the Fourth and Fourteenth Amendments under § 1983; (3) false arrest and imprisonment under Kentucky law; (4) malicious prosecution under Kentucky law; (5) assault under Kentucky law; (6) battery under Kentucky law; and (7) punitive damages. [Dkt. 1 at 7–9; Dkt. 14-1 at 10–20]. A day later, Osorio filed his First Amended Complaint with some additional allegations and exhibits. [Dkt. 3]. Detective Kilmer filed his Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) on April 13, 2026, [Dkt. 12], and Osorio thereafter moved for leave to file his Second Amended Complaint, [Dkt. 14]. Osorio's tendered Second Amended Complaint contains more factual allegations in response to Detective Kilmer's Motion for Judgment on Pleadings. [Dkt. 14-1]. Most notably, the Second Amended Complaint adds that Detective Kilmer intentionally or recklessly made material omissions and misrepresentations in the Criminal Complaint by

claiming that he used "investigative tools" and by claiming that Osorio was a match for "Yony." [*Id.* at 5–6].

Detective Kilmer's Motion for Judgment on the Pleadings argues that Osorio fails to state a claim upon which relief can be granted for his § 1983 claims and that qualified immunity nevertheless shields Detective Kilmer from liability. [Dkt. 12 at 4–8]. His Motion does not explicitly address Osorio's claims under Kentucky law. After both parties filed their briefs, the Court held an oral argument to address the two Motions, which are now ripe for review.

## II. Analysis

A motion for judgment on the pleadings under Federal Rule 12(c) invokes the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). To survive a Rule 12(c) or Rule 12(b)(6) motion, "a complaint must present facts that, if accepted as true, sufficiently 'state a claim to relief that is plausible on its face.'" *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.

The Court views the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). All reasonable inferences are drawn in favor of the plaintiff. *Coley*, 799 F.3d at 537. "The Court need not, however, 'accept the plaintiff's legal conclusions or unwarranted factual inferences as true.'" *Sandmann v. WP Co.*, 401 F. Supp. 3d 781, 787 (E.D. Ky. 2019) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

Detective Kilmer's Motion argues not just that Osorio has failed to satisfy these pleading standards, but also that he should prevail on qualified immunity. Qualified immunity shields an officer like Detective Kilmer from liability unless he "violated a federal statutory or constitutional right" and "the unlawfulness of [his] conduct was 'clearly established at the time'" of the violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). At the pleading stage, courts assess the officer's conduct based on the facts alleged by the plaintiff. *See Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 896 (6th Cir. 2025). So it is often inappropriate for a court to dismiss a complaint on qualified immunity grounds before commencing discovery. *See id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)); *see also Myers v. City of Centerville*, 41 F.4th 746, 758 (6th Cir. 2022) ("[W]hether the alleged constitutional violation is clearly established—'is sometimes difficult' on the pleadings, since that 'inquiry may turn on case-specific details that must be fleshed out in discovery.'" (quotation omitted)). Indeed, the Sixth

Circuit "disfavors" granting qualified immunity based on the pleadings. *Romero v. City of Lansing*, 159 F.4th 1002, 1008 (6th Cir. 2025). "That is because, in most cases, '[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely govern[ed]' by precedent, which prevents us from determining whether the facts of [the] case parallel a prior decision or not.'" *Conner v. City of Covington*, No. 2:25-cv-00042-SCM-CJS, 2026 WL 2494576, at *12 (E.D. Ky. July 22, 2026) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)) (alteration in original). Nevertheless, it is still Osorio's burden to show that Detective Kilmer is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

Of course, to properly apply these standards, one must identify the pleading to which they apply. Here, there are multiple complaints. Osorio filed an initial Complaint, and then a first Amended Complaint, and now has sought leave to file a Second Amended Complaint. Because a party may amend his pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading, *see* Fed. R. Civ. P. 15(a), the first Amended Complaint automatically superseded the initial Complaint upon its filing. And because Detective Kilmer does not consent to an additional amendment, [*see* Dkt. 17], Osorio may only file his Second Amended Complaint with this Court's leave. Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave when justice so

requires." But an amendment is improper where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (quoting *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022)). Here, Detective Kilmer argues that the Motion for Leave must be denied as futile because even the proposed amendments are insufficient to survive qualified immunity. [Dkt. 17 at 1].

Applying these standards, the Court will grant Osorio's Motion for Leave to file the Second Amended Complaint. And the Court finds that the § 1983 claims in Osorio's Second Amended Complaint contain enough factual allegations to survive Detective Kilmer's Motion and defeat qualified immunity at this stage of the action.[2] So the Court will deny the Motion for Judgment on the Pleadings.

**A. Osorio states a viable claim under § 1983 for false arrest in violation of the Fourth Amendment.**

Section 1983 provides a plaintiff with a private cause of action for the injurious deprivation of his or her rights by a defendant who acted under the color of state law. In this case, the Plaintiff asserts claims under § 1983 based on an alleged deprivation of rights under the Fourth Amendment.

The Fourth Amendment of the U.S. Constitution secures the right to be free

---

[2] Because the Defendants have had an opportunity to brief the merits of the Second Amended Complaint in arguing that it is futile, [*see* Dkt. 17], the Court will consider the allegations in that pleading in ruling on the Motion for Judgment on the Pleadings. *Cf. Welch v. Liberty Mut. Pers. Ins. Co.*, No. 23-48-DLB-CJS, 2023 WL 6926256, at *3 (E.D. Ky. Oct. 19, 2023).

from unreasonable searches and seizures. U.S. Const. amend. IV. It requires that arrests be supported by probable cause, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), and it likewise requires that probable cause support a defendant's continued detention, *see Tlapanco v. Elges*, 969 F.3d 638, 654–55 (6th Cir. 2020); *see also id.* at 659 (Thapar, J., concurring); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). Probable cause for an arrest exists when "the facts and circumstances within [the officer's] knowledge . . . [are] sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *United States v. Watson*, 142 F.4th 872, 877–78 (6th Cir. 2025) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alteration in original).

To state a § 1983 claim for false arrest or imprisonment, Osorio must allege that he was arrested without probable cause. *See Tlapanco*, 969 F.3d at 652. "[I]t is well-established in the Sixth Circuit that a facially valid warrant is a complete defense to a federal constitutional claim for false arrest and false imprisonment." *Trent v. Huff*, 178 F. Supp. 3d 565, 569 (E.D. Ky. 2016) (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). And, in this case, Osorio was arrested with a warrant. But that does not end the inquiry because there is an exception for situations where the warrant was issued on the basis of materially false or misleading statements "[made] either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Tlapanco*, 969 F.3d at 652 (quoting *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)) (alteration in original); *Voyticky*, 412 F.3d at 677 n.4. A false or misleading statement in a warrant affidavit is material "if the

remainder of the affidavit is insufficient to establish probable cause." *Butler v. City of Detroit*, 936 F.3d 410, 422 (6th Cir. 2019) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). For example, in *Butler* the Sixth Circuit found that a false statement by an officer claiming to have personally seen illegal activity was immaterial in a warrant affidavit because there was also reliable information from a confidential informant that would have sufficed for probable cause. *Id.* at 417, 422–23.

Osorio alleges that he was arrested pursuant to a warrant that lacked probable cause because it was based on intentionally or recklessly false or misleading statements by Detective Kilmer. [Dkt. 14-1 at 5–8]. The problematic statements, according to Osorio, are that: (1) Detective Kilmer used "investigative tools" to identify Osorio when in reality the only tool was uncorroborated AI facial recognition technology; and (2) Detective Kilmer compared the photos and "concluded the subjects matched" even though no reasonable officer could think that Osorio looked like the suspect in the security footage. [*Id.* at 4; Dkt. 3-3]. The allegations that these statements were intentionally or recklessly false or misleading are bolstered by the Florence Police Department's policy prohibiting the use of AI facial recognition technology as a substitute for the judgment of an officer. [Dkt. 3-2]. In other words, the policy put Detective Kilmer on notice that he should not have been relying solely on AI to make arrests, and yet he allegedly did so anyway. Moreover, he compounded the problem by failing to inform the reviewing court that he had relied solely on uncorroborated AI information. Under these alleged circumstances, one can plausibly conclude that the detective intentionally or recklessly made false

statements to obtain the warrant. And Osorio plausibly asserts that those false or misleading statements were an essential basis for the arrest warrant. [*See* Dkt. 14-1 at 5–6]. So the allegations are sufficient to state a claim for false arrest and imprisonment.

But according to Detective Kilmer, Osorio cannot state a claim because, even without the allegedly false or misleading statement, the warrant affidavit still contained enough material to support probable cause. [Dkt. 17 at 2; *see* Dkt. 12 at 6–8]. Unlike the officer in *Butler*, however, the Complaint indicates that Detective Kilmer's only connection between the suspect from the security footage and Osorio is rooted in the misleading statement that Detective Kilmer used "investigative tools" and that Osorio's photo matched. [Dkt. 3-3]. The remainder of Detective Kilmer's affidavit addresses the alleged criminal activity by the suspect who appeared at the bank—not Osorio. [*Id.*]. Without some other way of connecting Osorio to that suspect, like the word of the confidential informant in *Butler*, Detective Kilmer's affidavit comes up short.

Detective Kilmer also argues that even if he allegedly used only one tool, it was an immaterial error for him to say that he used "investigative tools" in the affidavit. [*See* Dkt. 12 at 6 (citing *Nerswick v. CSX Transp., Inc.*, 441 F. App'x 320, 322 (6th Cir. 2011) (finding that an officer's reliance on a single video tape rather than "video tapes"—as stated in the affidavit—"was not 'material,' since there is no reason to think it affected the deputy clerk's decision to issue the warrant."))]. But in this case, Osorio alleges that Detective Kilmer used only one notoriously unreliable tool without

disclosing his use of that tool or doing anything to corroborate that the information garnered from that tool was reliable. Assuming the allegations are true, there is good reason to think that the warrant would not have been issued if Detective Kilmer had painted a full picture of how he arrived at the conclusion that Osorio was the individual who attempted to cash the fraudulent check.

In his Motion, Detective Kilmer relies on *Snyder v. United States*, 590 F. App'x 505 (6th Cir. 2014), to argue that Osorio cannot state a claim for false arrest based on a failure to "double-check" the accuracy of the AI facial recognition match. [*See* Dkt. 12 at 7, 10]. That might be true of the First Amended Complaint. However, Osorio's Second Amended Complaint adds allegations that Detective Kilmer's affidavit contained intentional misstatements or omissions, which distinguishes this case from *Snyder*. [Dkt. 14-1 at 6]; *see Snyder*, 590 F. App'x at 513–14 (noting that the plaintiff did "not allege that [the defendant] intentionally misled the magistrate"). And *Snyder* is also distinguishable because it involved a situation where the Cincinnati Police Department allegedly failed to double-check the accuracy of information contained in a file that it obtained directly from the FBI. *Id.* at 514. Failing to double-check the FBI's work is materially different from failing to double-check—or do anything at all to corroborate—information obtained from AI, which is what the Plaintiff alleges here. Of course, discovery might prove that there is more to this story than the Plaintiff alleges. If so, the Defendant might be entitled to judgment after all. But assuming Osorio's allegations to be true—which the Court must do at this juncture—the Plaintiff has adequately stated a claim of false arrest

in violation of the Fourth Amendment.

### B. Osorio also states a viable claim under § 1983 for malicious prosecution in violation of the Fourth Amendment.

Osorio's § 1983 claim for continued detention without probable cause—denominated as a claim of "malicious prosecution"[3]—requires him to allege: (1) Detective Kilmer "ma[d]e, influence[d], or participate[d] in the decision to prosecute" Osorio in a criminal case; (2) there was no "probable cause for the prosecution"; (3) Osorio's liberty was deprived as a result of the prosecution, not counting his initial arrest; and (4) the prosecution was resolved in Osorio's favor. *Sykes*, 625 F.3d at 308–09 (alterations in original) (citations omitted). Contrary to its name, a claim of "malicious prosecution" under § 1983 does not require a showing of malice. *See Tlapanco*, 969 F.3d at 659 (Thapar, J., concurring) (citing *Howse v. Hodous*, 953 F.3d 402, 408–09 (6th Cir. 2020)).

Ordinarily, the first element cannot be satisfied simply on the basis that a "prosecution was 'initiated by the citations and arrests issued by the [police] [D]efendant[ ] against the [P]laintiff[ ].'" *Hartman v. Thompson*, 931 F.3d 471, 485 (6th Cir. 2019). In other words, the mere fact that a police officer's investigative work and arrest may have led to the decision to prosecute—and therefore likewise led to

[3] As Judge Thapar explained in his concurring opinion in *Tlapanco*, the "malicious prosecution" label should not be applied to claims like this. 969 F.3d at 658–60 (Thapar, J., concurring). Instead, the claim should be characterized "simply as the right under the Fourth Amendment to be free from continued detention without probable cause." *Id.* at 658 (Thapar, J., concurring) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006)). But because the Sixth Circuit has not jettisoned the case law that continues to characterize such claims as "malicious prosecution," this Court will analyze the claim using that label.

the defendant's continued detention—does not necessarily mean that a police officer will be liable if that continued detention was wrongful. Rather, "[t]he officer must have participated in a way that aids in the decision, as opposed to passively or neutrally participating, which requirement is satisfied by showing some element of blameworthiness or culpability in the participation." *Meeks v. City of Detroit*, 727 F. App'x 171, 178 (6th Cir. 2018) (citations and quotation marks omitted). Under this standard, a police officer can be said to have made, influenced, or participated in the decision to prosecute—and thereby prolong the defendant's detention—when the officer has provided materials that form the basis for the criminal charge and those materials contained falsehoods or material omissions that "were made deliberately or with reckless disregard for the truth." *Tlapanco*, 969 F.3d at 655 (quoting *Meeks*, 727 F. App'x at 178).

Osorio makes precisely those kinds of allegations here. Like with the false-arrest-and-imprisonment claim, Osorio's allegations of "malicious prosecution" are sufficient to survive Detective Kilmer's Motion. Specifically, the Second Amended Complaint states that: Detective Kilmer was a key participant in Osorio's prosecution by conducting the investigation and signing the criminal complaint; there was an absence of probable cause; Osorio was incarcerated after his initial arrest; and the indictment against Osorio was dismissed with prejudice due to innocence. [Dkt. 14-1 at 6–8]. Again, it is possible that discovery might show that Osorio does not have a valid claim after all. But only the well-pleaded allegations matter at this point. And those allegations are enough to state a claim of malicious prosecution in

violation of the Fourth Amendment.

**C. Detective Kilmer is not entitled to qualified immunity at this juncture.**

Osorio states viable § 1983 claims based on Detective Kilmer's alleged material falsehoods or omissions, but his claims may not proceed unless he can show that Detective Kilmer's alleged conduct violated clearly established law. In other words, it is not enough for Osorio to plead his claims sufficiently; he must also show that Detective Kilmer is not entitled to qualified immunity.

Detective Kilmer is entitled to qualified immunity unless his conduct violated a federal statutory or constitutional right and the unlawfulness of his conduct was clearly established at the time. *Wesby*, 583 U.S. at 62–63 (quoting *Reichle*, 566 U.S. at 664). For a law to be clearly established, it must be "beyond debate" that the officer's conduct violated the plaintiff's right, such that any reasonable officer would know that his conduct was unlawful. *Id.* at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This standard typically requires the plaintiff to point to then-existing legal precedent that clearly applies to the officer's conduct under the circumstances with a "high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). Even on a motion for judgment on the pleadings, a court may not define clearly established law at a high level of generality. *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1009 (6th Cir. 2024) (citing *Wesby*, 583 U.S. at 63–64); *see also Siefert v. Hamilton County*, 951 F.3d 753, 765 (6th Cir. 2020) (finding that the degree of specificity required for the "right" is determined by the scope of the allegations in the complaint). Ultimately, the rule must be specific enough that "the unlawfulness of the officer's conduct" immediately follows "from the conclusion that [the rule] was

firmly established." *Wesby*, 583 U.S. at 64 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Osorio claims that he has a clearly established right to be free from arrest without probable cause and that no reasonable officer would rely solely on AI to establish probable cause, nor would any reasonable officer have believed that Osorio was the suspect depicted by the security footage. [Dkt. 13 at 11–12 (citing *Rieves v. Town of Smyrna*, 959 F.3d 678, 696 (6th Cir. 2020))]. Osorio relies primarily on *Rieves*, a Sixth Circuit case where business owners selling CBD products alleged that two prosecutors knew or should have known there was "no evidence of the products' illegality" under state law when they "pushed law enforcement" to arrest the business owners. *Rieves*, 959 F.3d at 696. This alleged conduct violated the Fourth Amendment, and the Sixth Circuit found "[i]t is clearly established that prosecutors may not make a probable cause determination based on unreliable evidence" or "information too vague and from too untested a source." *Id.* (citations omitted). Thus, the prosecutors were not entitled to qualified immunity based on the facts alleged in the complaint. *Id.* at 698. Osorio argues that, like the prosecutors in *Rieves*, Detective Kilmer allegedly knew or should have known that his evidence of Osorio's wrongdoing was based solely on an unreliable source—namely, AI facial recognition technology. [Dkt. 13 at 12].

Osorio also cites *Tlapanco* to say, even more specifically, that he has a "right to be free from searches and seizures predicated on an officer's reckless submission of false statements in a warrant affidavit," and that this right "is clearly established."

969 F.3d at 648. In *Tlapanco*, a defendant officer misidentified the plaintiff's username on a messaging application and had him arrested for soliciting nude images from a minor. *Id.* at 644. The charges were ultimately dismissed. *Id.* at 644. The misidentification occurred because, rather than including the suspect's entire username in the affidavit, the defendant officer used a shortened version that implicated the plaintiff. *Id.* The Sixth Circuit reversed the district court's grant of summary judgment for the defendant officer on qualified immunity grounds because a reasonable jury could find a violation of the plaintiff's right to be free from arrest based on recklessly false statements in the affidavit. *Id.* at 648. Like the plaintiff in *Tlapanco*, Osorio alleges that Detective Kilmer's false statements or omissions caused him to be arrested without an adequate basis for probable cause. [Dkt. 13 at 12–13].

Detective Kilmer responds that these cases would not put a reasonable officer in Detective Kilmer's position on notice that there was no probable cause to arrest Osorio. [Dkt. 16 at 4]. Specifically, Detective Kilmer argues that "[b]ecause Osorio has identified no such case establishing that exclusively relying on [AI] facial-recognition technology to establish probable cause violated Osorio's Fourth Amendment rights, his 'argument comes up short.'" [*Id.* (quoting *Mulcahey v. Twp. of Chocolay*, No. 25-1396, 2026 WL 64236, at *3 (6th Cir. Jan. 8, 2026))]. Detective Kilmer's argument misses the mark. While the allegations here and the facts in *Rieves* and *Tlapanco* are not one-to-one, Osorio need not rely on case law that is "directly on point" if the "lawfulness of the particular arrest" is "beyond debate." *Wesby*, 583 U.S. at 64. And the unlawfulness of Detective Kilmer's conduct—at least

as Osorio alleges—is beyond debate. It was Detective Kilmer's obligation under the law to find probable cause when he applied for an arrest warrant, and yet—according to Osorio's allegations—Detective Kilmer delegated that entire task to AI facial recognition technology without the exercise of any independent judgment on his part and then made material misstatements or omissions in the affidavit to conceal the nature of the investigation (or the lack thereof). [Dkt. 14-1 at 5–6]. Based on the principles in *Rieves* and *Tlapanco*, no reasonable officer would think that Detective Kilmer's reliance on AI facial recognition technology and the representations in his affidavit would satisfy probable cause.

Even without Osorio's reliance on *Rieves* and *Tlapanco*, courts have recognized an exception for the "rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 583 U.S. at 64 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *Saalim*, 97 F.4th at 1009. For a § 1983 claim based on false arrest, the obvious-case exception will apply if "any reasonable officer would have recognized the absence of probable cause." *Blackwell v. Nocerini*, 123 F.4th 479, 492 (6th Cir. 2024) (quoting *Wesby*, 583 U.S. at 64). In *Blackwell*, the plaintiff alleged that he was prosecuted for stalking in the absence of probable cause after he supposedly took photos of the city manager, followed the city manager's car for a few blocks, and loitered in a parking lot with others after city council meetings. *Id.* at 482. The city manager reported these activities to the police following public criticism from the plaintiff and insisted that a criminal complaint be filed against the plaintiff. *Id.* at

482–83. The Sixth Circuit agreed that no reasonable officer would believe that any of those activities would qualify as stalking or harassment to support a finding of probable cause. *Id.* at 489–90. Thus, the obvious-case exception applied and the plaintiff "did not need to identify analogous probable-cause caselaw to get past the pleading stage." *Id.* at 492 ("[W]e can save for another day whether he must do so at the summary-judgment stage."). Detective Kilmer's conduct—as Osorio alleges—is even more obviously unlawful than the alleged conduct of the city officials in *Blackwell*.

The following hypothetical illustrates how the rare obvious-case exception applies here: Say that Detective Doe is called in to investigate a theft that occurred at a bank earlier in the day. As Detective Doe walks on the street in the vicinity of the bank, he uses a Magic 8 Ball to determine whether each pedestrian passerby is a potential suspect. The first pedestrian walks by, so Detective Doe shakes the Magic 8 Ball and asks whether that individual is the suspect: "My sources say no." Then, Plaintiff Peter walks by, and Detective Doe once again shakes the Magic 8 Ball and asks whether Plaintiff Peter is the suspect: "You may rely on it." Using the output from this "tool," Detective Doe applies for a warrant to arrest Plaintiff Peter and states in his affidavit that he used "investigative tools" to match the suspect to Plaintiff Peter. Officers arrest Plaintiff Peter and he is charged with theft, but the charges are dropped and he is released when his alibi checks out. In Plaintiff Peter's subsequent suit for false arrest, Detective Doe claims qualified immunity and argues that Plaintiff Peter cannot point to any case law saying that the use of a Magic 8 Ball

in this manner is a constitutional violation. But the unconstitutionality of Detective Doe's exclusive reliance on such an unreliable tool is so obvious that Plaintiff Peter does not need to cite a factually similar case. Any reasonable officer would know that additional investigative work is necessary to obtain sufficient probable cause for arrest; a Magic 8 Ball alone will not cut it. Similarly, while AI facial recognition technology has rapidly developed over recent years and is likely more reliable than a Magic 8 Ball, placing unquestioned reliance on such technology is still not much different in principle from placing unquestioned reliance on a Magic 8 Ball. No reasonable officer would think that Detective Kilmer's allegedly *exclusive* reliance on AI is lawful—especially given how Osorio's booking photo looks nothing like the suspect from the security camera footage.

Lurking in the background of all of this is the fact that this case is still at the pleading stage. It is certainly possible that discovery might uncover facts that would entitle Detective Kilmer to qualified immunity. But without more factual development, it is difficult to know whether Detective Kilmer's conduct actually violated clearly established law. That is why the Sixth Circuit has expressed a general hesitancy to resolve questions of qualified immunity at the pleading stage. *See Evans-Marshall*, 428 F.3d at 235 (Sutton, J., concurring). At this juncture, the Court can only evaluate qualified immunity based on the allegations in the complaint. And those allegations—when taken as true—show that Detective Kilmer is not entitled to qualified immunity. Things might change in light of discovery, but as it stands now, the Court will deny Detective Kilmer's request for qualified immunity.

## III. Conclusion

Osorio's Second Amended Complaint adequately states § 1983 claims, and Detective Kilmer is not entitled to qualified immunity based on Osorio's allegations. Given that Osorio's Second Amended Complaint is not futile and was filed relatively early in the course of the litigation, the interests of justice favor permitting Osorio's proposed amendments.

For the reasons set forth above, it is hereby **ORDERED** as follows:

1) Osorio's Motion for Leave to File Second Amended Complaint, [Dkt. 14], is **GRANTED**. The Second Amended Complaint and Jury Demand attached as Exhibit 1 to the Motion for Leave to File Second Amended Complaint, [Dkt. 14-1], shall be entered on the docket as the operative Complaint.

2) Detective Kilmer shall have 14 days from the date of this Order to file an Answer or another responsive motion in response to the Second Amended Complaint.

3) Detective Kilmer's Motion for Judgment on the Pleadings, [Dkt. 12], is **DENIED**.

4) The parties shall appear for a status conference on **Thursday, November 19, 2026,** at the United States Courthouse in **Covington, Kentucky,** at the hour of **3:00 p.m.** for the purpose of discussing whether an amended scheduling order is needed in this case.

Signed this 9th day of November, 2026.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky